FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Aug 3, 2021
OFFICE OF THE CLERK

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Fort Smith Division

In the Matter of the Search of )
)
Electronic evidence currently in custody ) Case No. 21-68
of Homeland Security Investigations, )
Fort Smith, Arkansas, further described )
in Attachment A )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: **SEE ATTACHMENT A.**

located in the Western District of Arkansas, there is now concealed *(identify the person or describe the property to be seized)*: **SEE ATTACHMENT B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ■ evidence of a crime;
- ■ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(4) | Possession of Child Pornography |

The application is based on these facts: **SEE AFFIDAVIT OF HSI SA MARK ADAIR**

☐ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Mark Adair, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/3/21

City and state: Fort Smith, Arkansas

*Judge's signature*

Mark E. Ford, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

I am submitting this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant to seize and examine digital devices and other electronic storage media, also referred to as "SUBJECT ITEMS" (more fully specified in Attachment A). On June 15, 2021, the SUBJECT ITEMS were received by Special Agent Mark Adair from a complainant, C.B., who alleged that these SUBJECT ITEMS contained child pornography and possible child exploitation of an identified child victim. C.B. voluntarily provided these items to Special Agent Mark Adair at the Barling, Arkansas Police Department where she was interviewed about the child exploitation and child pornography complaint. These SUBJECT ITEMS are now being stored as evidence at Homeland Security Investigations RAC Fort Smith, Arkansas office.

- Toshiba 2 TB external drive Serial number 35RBTQOFT18B
- WD My Passport Ultra external drive (label marked Work 1) Serial Number WX51AB50HXRE
- Seagate Backup Plus 4TB external drive Serial Number NA9F6CHA
- Toshiba 2 TB external Drive Serial Number 44MBTZENT18B
- Unknown Brand external drive (label BU's 1) (label Beaux) Serial Number WXF1A11E7256
- Seagate Backup Plus 4TB external drive Serial Number NA9W3EMJ
- Toshiba Disc Drive Serial Number X86KFDOIS
- SanDisk 8GB card
- SanDisk 64GB card
- Thumb Drive Serial Number 193118333933
- PNY 8GB Thumb Drive
- PNY 32 GB Thumb Drive
- SanDisk Ultra 256GB Thumb Drive
- Toshiba 8GB Thumb Drive

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B
## ITEMS TO BE SEARCHED FOR AND SEIZED

a. Any and all images of suspected child pornography and files containing images of suspected child pornography, any and all images believed to be an attempt to produce child pornography, in any form wherever it may be stored or found including, but not limited to:

   i. originals, thumbnails, and copies of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

   ii. videos (AKA motion pictures, films, film negatives), and other recordings or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

   iii. Images self-produced of the defendant and minors, and attempts to take or produce such;

   iv. Images of children, nude or otherwise, possessed, sent, received, or via message, email, or otherwise stored on the phone

   v. Internet history, including CACHE memory related to internet searches for child pornography or websites that could pertain such.

b. information or correspondence pertaining to the solicitation of others for sexual activity involving minors, and any and all information, messages, etc. related to the sexual exploitation of children, including but not limited to:

   i. correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, text messages, establishing possession, identity of individuals, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

   ii. records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    iii. Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

    iv. Any and all chat log, text messages, email, or any type of communication in any form that is related to the sexual exploitation of minors for sexual purposes or related to the production, distribution or possession of child pornography.

c. Any and all security devices, to include encryption devices, needed to gain access to the devices;

d. Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

e. Any and all recordings, including those made by the defendant or the minor victim, or anyone else that depicts the defendant or others engaging in sexually explicit conduct of any type.

f. In searching the data, the computer personnel may examine and copy all of the data contained in the subject item to view their precise contents and determine whether the data falls within the items to be seized. In addition, the examining personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized.

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Mark Adair, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the seizure/maintenance and examination of property— electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations (HSI), and I have been employed in this capacity since June 2002. I am a graduate of the Criminal Investigator Training Program and the U.S. Immigration and Customs Enforcement Special Agent Training Academy. As a result of my employment with HSI, my duties include, but are not limited to, the investigation and enforcement of Titles 8, 18, 19, 21 and 31 of the United States Code (U.S.C.). I am an "investigative or law enforcement officer of the United States" within the meaning defined in 18 U.S.C. § 2510(7), in that I am an agent of the United States authorized by law to conduct investigations of, and make arrests for, federal offenses.

3. As part of my duties as an HSI agent, I investigate criminal violations relating to the sexual exploitation of children, including the illegal production, distribution, transportation, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. I have received extensive training in the area of child exploitation and have observed and reviewed numerous examples of child pornography, as defined in 18 U.S.C. § 2256, in all forms of media. I have been involved in numerous child pornography investigations, and I am familiar with the tactics used by individuals who collect and distribute child pornographic material.

4. This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. I am submitting this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant to seize/maintain and examine digital devices and other electronic storage media, also referred to as "SUBJECT ITEMS" (more fully specified in Attachment A). On June 15, 2021, the SUBJECT ITEMS were received from a complainant, C.B,, who alleged that these SUBJECT ITEMS contained child pornography. As explained in further detail below, C.B. voluntarily provided these items to Special Agent Mark Adair at the Barling, Arkansas Police Department where she was interviewed about the child exploitation and child pornography complaint. These SUBJECT ITEMS are now being stored as evidence at Homeland Security Investigations RAC Fort Smith, Arkansas office.

## STATUTORY AUTHORITY

6. Title 18, United States Code, Section 2252(a)(4) prohibits a person from knowingly possessing or accessing with intent to view a matter which contain[s] any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct.

7. "Child Pornography" is defined in Title 18, United States Code, Section 2256(8) as any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or

modified to appear that an identifiable minor is engaged in sexually explicit conduct.

8.  Title 18, United States Code, Section 2256(2)(A) defines "sexually explicit conduct" to mean actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same sex or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.

## PROBABLE CAUSE

9.  On June 15, 2021, HSI Special Agent Adair and Barling Police Department, Detective Becker, interviewed C.B. at the Barling Police Department in Barling, Arkansas.

10. C.B. told investigators she lived with the suspect "Beaux" Elden VIZENA for the past two years in Fort Smith Arkansas. C.B. stated that around 18 months ago, C.B. walked in on VIZENA, who was observed by C.B. to be watching a video, depicting VIZENA naked and a young female child sitting in his lap facing him naked. C.B. stated that VIZENA's "nuts were sticking out of the child's ass." C.B. stated she saw VIZENA sitting in his red glider chair, which C.B. recognized. C.B. stated that she recognized the child in the video one of VIZENA's minor relatives. C.B. stated that they resided at XXXX South 28th Street, Fort Smith, Arkansas when C.B. observed the video with VIZENA's minor relative sitting nude in VIZENA's lap.

11. C.B. was able to show investigators several photographs of the minor relative C.B. identified in the video, from the Facebook account page of the child's mother.

12. C.B. stated that VIZENA watches pornography depicting young boys involved in sexual acts every day. C.B. described his watching child pornography as "every day 24-7."

13. Your Affiant is aware through his training and experience that the images and video described in paragraphs 10 and 12 would constitute sexually explicit conduct of minors as is defined under Title 18, United States Code, Section 2256.

14. C.B. brought a black Targus bag with her to the interview at the Barling Police Department, which contained numerous external drives and thumb drives. C.B. stated that she has seen VIZENA watching child pornography on the large (external drives). Due to the number of devices, C.B. was unable to provide the exact devices in which VIZENA was using to view the child pornography. C.B. stated VIZENA always has the black bag nearby containing the external and thumb drives.

15. C.B. described the videos she has seen VIZENA watching as young boys engaging in oral and anal sex with each other and the videos had titles "tween" in the video. Special Agent Adair knows that the term "tween" typically refers to children from the ages of 9-12 years of age who are between the stages of childhood and adolescence.

16. C.B. stated that on Friday, June 11, 2021, VIZENA and C.B. were moving from XXX Creston, Fort Smith, back to XXXX South 28th Street, Fort Smith, and had loaded C.B.'s vehicle with property to take to the residence. C.B. stated that upon arrival at the XXXX South 28th Street, Fort Smith residence, VIZENA became aggressive with C.B. and assaulted her. C.B. stated that she got into her vehicle and left the residence and went to her sister's residence in Barling, Arkansas. The next morning, she saw the black Targus bag belonging to VIZENA, which contained the external drives and thumb drives in her vehicle. C.B. stated that VIZENA has been calling her wanting the bag and contents back.

17. During the interview, C.B.'s sister, A.D., reported that she has on one occasion around 6-8 months ago, walked into C.B.'s residence, and witnessed VIZENA masturbating and watching a video of young male children engaging in sexual activity.

18. C.B. stated that she did not want VIZENA to have possession of the child pornography contained on the devices, and voluntarily turned them over to Special Agent Adair. Special Agent Adair took possession of the black bag and its contents (SUBJECT ITEMS) and provided C.B. with a property receipt.

19. The SUBJECT ITEMS are currently in storage at Homeland Security Investigations Resident Agent in Charge, Fort Smith Arkansas, located at 9441 Old Greenwood Road, Fort Smith, Arkansas. In my training and experience, I know that the SUBJECT ITEMS have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT ITEMS first came into the possession of HSI.

## TECHNICAL BACKGROUND

20. Based on my training, knowledge, and experience, I am aware that individuals who commit online sexual exploitation offenses involving minors will often collect and/or view child pornography on their computer, and digital media storage devices, for several reasons:

a. They may receive sexual gratification and satisfaction, and/or fantasize about sexual contact with minors by viewing minors engaged in sexual activity or sexually suggestive poses;

b. They may collect sexually explicit or suggestive materials in a variety of media for their own sexual arousal and gratification.

c. They almost always possess and maintain their material in the privacy and security of their home or some other secure location. Child pornography distributors/collectors typically retain recordings, mailing lists, child erotica and store their child pornography amongst other,

otherwise legal media or files. Digital evidence, like child pornography contraband, is different than traditional evidence that can be concealed, sold, used and/or destroyed and is not as volatile as other illegal items like narcotics; and

 d. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by to enable the owner to view the collection, which is valued highly.

 e. They also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

 f. They generally prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

 21. Increasingly, individuals who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes, use mobile computing devices to do so. These portable devices can connect to the Internet at an individual's residence, or also through routers and wireless routers in various public and private locations. Mobile computing devices and electronic storage media such as laptops, tablets, smart phones, and flash drives, often travel with the person utilizing them and are commonly found in residences during search warrants.

22. I know computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. Photographs and other digital images must be stored as data on a computer or other digital media device using specialized software to transfer images from a digital camera to a computer, or other electronic storage device, or by transferring images saved onto a media card to a computer or electronic storage device.

23. I know that if a child pornography viewer chooses to upgrade their electronic storage device, it is a simple process to transfer images from one device to another device. After the photograph or other image has been transferred onto the computer, the computer stores the data from the image as an individual "file." Such a file is generally known as a "GIF" (Graphic Interchange Format) or "JPEG" (for the Joint Photographic Experts Group, which wrote the standard file, recognizable by the ".gif" or ".jpg" file extensions (hereinafter referred to as an "image file.")) Computers are capable of rendering the digital image on a computer screen, transferring the image to another computer, and/or printing the image.

24. I know that computer hardware, other digital devices, software, and electronic files are important to a criminal investigation in two distinct ways: the objects themselves may be contraband, evidence, instrumentalities, or fruits of a crime; and/or the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data.

25. The computer's capability to store images in digital form makes it an ideal repository for child pornography. The size of electronic storage media (commonly referred to as a "hard drive") used on the home computers has grown tremendously within the last several years. Hard drives with the capacity of 160 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation.

It is possible to use a video camera to capture an image, process that image in a computer with a video capture board and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

26. I know from training and experience that computer systems commonly consist of computer processing units (CPU's) hard disks, hard disk drives, display screens, keyboards, printers, modems (used to communicate with other computers), electronic cables, USB flash drives, and other forms of magnetic and optical media containing computer information I know from training and experience that computers and magnetic and optical media are used to store information. In addition to the above-mentioned image files, that information often includes data files or other persons engaged in similar activities with minors, and lists of other exploited minors, as well as records of correspondence and conversations (printed or electronic) with such persons.

27. In addition to being evidence of a crime, there is probable cause to believe that the computers and their storage devices, the monitor, keyboard, printer, modem, and other system components were used as a means of committing offenses involving the sexual exploitation of minors in violation of law. Accordingly, permission is sought herein to search computers and related devices consistent with the scope of the requested search.

28. In addition to offenders who collect and store child pornography, law enforcement has encountered offenders who obtain child pornography from the Internet, view the contents, and subsequently delete the contraband, often after engaging in self-gratification. In light of technological advancements, increasing Internet speeds and worldwide availability of child sexual exploitative material, this phenomenon offers the offender a sense of decreasing risk of being identified and/or apprehended with quantities of contraband. This type of consumer is commonly referred to as a 'seek

and delete' offender, knowing that the same or different contraband satisfying their interests remain easily discoverable and accessible online for future viewing and self-gratification. I know that, regardless of whether a person discards or collects child pornography he/she accesses for purposes of viewing and sexual gratification, evidence of such activity is likely to be found on computers and related digital devices, including storage media, used by the person. This evidence may include the files themselves, logs of account access events, contact lists of others engaged in trafficking of child pornography, backup files, and other electronic artifacts that may be forensically recoverable.

29. Based on my training and experience, and that of computer forensic agents that I work and collaborate with on a daily basis, I know that every type and kind of information, data, record, sound or image can exist and be present as electronically stored information on any of a variety of computers, computer systems, digital devices, and other electronic storage media. I also know that electronic evidence can be moved easily from one digital device to another. As a result, I believe that electronic evidence may be stored on any of the digital devices seized.

30. Based on my training and experience, and my consultation with computer forensic agents who are familiar with searches of computers, I know that in some cases the items set forth in Attachment B may take the form of files, documents, and other data that is user-generated and found on a digital device. In other cases, these items may take the form of other types of data - including in some cases data generated automatically by the devices themselves.

31. Based on my training and experience, and my consultation with computer forensic agents who are familiar with searches of computers, I believe there is probable cause to believe that the items set forth in Attachment B will be stored in those digital devices for a number of reasons, including but not limited to the following:

a. Once created, electronically stored information (ESI) can be stored for years in very little space and at little or no cost. A great deal of ESI is created, and stored, moreover, even without a conscious act on the part of the device operator. For example, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache," without the knowledge of the device user. The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes affirmative steps to delete them. This ESI may include relevant and significant evidence regarding criminal activities, but also, and just as importantly, may include evidence of the identity of the device user, and when and how the device was used. Most often, some affirmative action is necessary to delete ESI. And even when such action has been deliberately taken, ESI can often be recovered, months or even years later, using forensic tools.

b. Wholly apart from data created directly (or indirectly) by user-generated files, digital devices - in particular, a computer's internal hard drive - contain electronic evidence of how a digital device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating systems or application operations, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible for a user to use such specialized software to delete this type of information - and the use of such special software may itself result in ESI that is relevant to the criminal investigation. In particular, to properly retrieve and analyze electronically stored (computer) data, and to ensure accuracy and completeness of such data and to prevent loss of the data either from accidental or programmed destruction, it is necessary to conduct a forensic examination of the

computers. To effect such accuracy and completeness, it may also be necessary to analyze not only data storage devices, but also peripheral devices which may be interdependent, the software to operate them, and related instruction manuals containing directions concerning operation of the computer and software.

32.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT ITEMS were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT ITEMS because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

  c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

  d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT ITEMS consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the SUBJECT ITEMS to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

34. Based on the interviews and personal observations of the two individuals who stated they viewed VIZENA viewing material of children under the age of 18 on the submitted SUBJECT ITEMS from June 15, 2021, I submit that this Affidavit supports probable cause for a search warrant

authorizing the examination of the SUBJECT ITEMS described in Attachment A to seek the items described in Attachment B as there is probable cause to believe that the SUBJECT ITEMS contain evidence of violations of Title 18, United States Code, Section 2252 (a)(4).

_____
Mark Adair, HSI Special Agent

Sworn and subscribed before me this __3__ day of August, 2021.

_____
Honorable Mark E. Ford
United States Magistrate Judge